## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| TREASA LISOWSKI,<br><br>                    Plaintiff,<br><br>     v.<br><br><br>TRANS UNION, LLC;<br>EQUIFAX INFORMATION SERVICES, LLC;<br><br><br>                    Defendants. | Civil Action No: 4:24-cv-237<br><br><br>**COMPLAINT AND<br>DEMAND FOR<br>JURY TRIAL** |

Plaintiff Treasa Lisowski ("Plaintiff") brings this Complaint by and through her attorneys, against the Defendant Trans Union, LLC ("TransUnion"), and Defendant Equifax Information Services, LLC ("Equifax"), (collectively, "Defendants") based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## INTRODUCTION/PRELIMINARY STATEMENT

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. by the Defendants. Plaintiff contends that the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and

consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. See 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.     Venue in the Northern District of Florida is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, Plaintiff resides here, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.     Plaintiff is a resident of the State of Florida, County of Gadsden.

6.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.     TransUnion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. TransUnion's principal place of business is located at 555 W. Adams Street, Chicago, Illinois 60661.

8.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

9.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Florida and conducted business in the State of Florida on a routine and systematic basis.

10.     Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a

"consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

11.    During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.    Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

### *The Role of Credit Agencies*

13.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

14.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.    Defendants are the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, who regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17.    The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.    Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.     Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be independently gathered by Defendants, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

20.     Defendants also obtain information from other CRAs, who commonly share information.

21.     Defendants regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Defendants sell to third parties for a profit.

22.     The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23.     Defendants' unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

24.     Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in their own files.

25.     Defendants fail to conduct a reasonable investigation into a dispute when they fail to notice the self-evident information Defendants already obtain regarding consumers.

26.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

27.     The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

28.     FICO Scores are calculated using information contained in Defendants' consumer reports.

29.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

30.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

31.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred,

and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

32.     The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

33.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports.

34.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

35.     Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendants.

36.     A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

37.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

38.     Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

39.     Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

40.     However, Defendants regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

41.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts and post-bankruptcy debts based on incomplete or knowingly inaccurate information.

42.     Defendants regularly publish consumer information that conflicts with the information provided by data furnishers, included in Defendants' credit files, contained in public records that Defendants regularly access, and/or sourced through Defendants' independent and voluntary efforts.

43.     Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

44.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate

consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

45.     Therefore, Defendants are on continued notice of their inadequate bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Bankruptcy*

46.     On or around December 17, 2011, Plaintiff opened an account with Capital One Bank, hereinafter "Capital One Account."

47.     On or around May 2, 2017, Plaintiff opened an account with Comenity Bank, hereinafter "Comenity Account."

48.     On or around May 5, 2017, Plaintiff opened an account with Capital One Bank/Kohls, hereinafter "Kohls Account."

49.     On or around May 24, 2018, Plaintiff opened an account with Capital One Bank/Walmart, hereinafter "Walmart Account."

50.     On or around June 24, 2018, Plaintiff opened an account with Ikea Visa Card, hereinafter "Ikea Account."

51.     On or around January 12, 2021, a collection account was placed with Caine & Weiner, hereinafter "C&W Account."

52.    On or around May 26, 2023, Plaintiff filed a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Hawaii, petition no. 1:23-bk-00388.

53.    Plaintiff included the above-mentioned accounts as well as other pre-bankruptcy accounts in her bankruptcy filings, collectively referred to as "Plaintiff's Accounts."

54.    Plaintiff received an Order of Discharge for her bankruptcy on August 29, 2023.

55.    Because the accounts were included in Plaintiff's Chapter 7 Bankruptcy, they were discharged when the Order of Discharge was entered.

### *The Inaccuracies on Defendants' Consumer Reports*

56.    On or around February 2024, Plaintiff obtained a copy of each of her credit reports from Equifax and TransUnion.

57.    Both Equifax and TransUnion failed to include Plaintiff's Chapter 7 Bankruptcy in the public records section of their respective and reports.

58.    Both Equifax and TransUnion misreported the Comenity Account as charged-off when it was actually discharged.

59.    In her Equifax credit report, Equifax reported the Toyota Account, the Capital One Account, and the Kohls Account as "UNAVAILABLE."

60.     Equifax is also reporting the Walmart Account with the status of "No more than three payments past due" and with a $320 balance.

61.     In her TransUnion credit report, TransUnion reported the Ikea Account as a charged-off account.

62.     Transunion is also reporting the C&W Account as an open collection account with a balance of $167.

63.     Defendants misrepresented Plaintiff's Accounts by stating they were charged-off and still due and owing when they were actually discharged in Plaintiff's Chapter 7 Bankruptcy.

64.     These credit reports were created after Plaintiff's Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

65.     The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on the consumer reports prepared by the Defendants.

66.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendants through multiple sources such as PACER, but Defendants failed to review those sources or knowingly rejected them.

67.     Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from her Chapter 7 Bankruptcy.

68.     However, Defendants failed to accurately report Plaintiff's Accounts and failed to report these accounts as being a part of Plaintiff's Chapter 7 Bankruptcy.

69.     Upon information and belief, Defendants received notice of Plaintiff's bankruptcy discharge through their independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

70.     Defendants also obtain information from other CRAs (who commonly share information).

71.     Defendants are aware that CRAs are generally required to report accounts that were actually discharged in the bankruptcy proceedings as included and discharged in bankruptcy.

72.     Defendants should have reported Plaintiff's Accounts as accounts that were included and discharged in Plaintiff's Chapter 7 Bankruptcy.

73.     Instead, Defendants incorrectly reported Plaintiff's Accounts as charged-off accounts with balances when they were actually accounts that were included and discharged in Plaintiff's Chapter 7 Bankruptcy.

74.     Defendants inaccurately reported Plaintiff's Accounts and failed to properly consider the Plaintiff's Chapter 7 Bankruptcy and the affect it had on relevant accounts.

75.     In any event, Defendants knew or had reason to know that the reported information was contradicted by notices received from third parties as well as from the bankruptcy proceedings themselves.

76.     If not patently inaccurate, Defendants' inaccurate reporting of Plaintiff's Accounts is materially misleading.

## *Plaintiff's Damages*

77.     As a preliminary matter, Defendants failed to report Plaintiff's Accounts accurately because Defendants failed to report them as accounts that were discharged in Plaintiff's Chapter 7 Bankruptcy.

78.     Plaintiff's creditworthiness is lowered because Defendants reported the Plaintiff's Accounts as debts that were charged off with balances that Plaintiff is still obligated to pay.

79.     As an individual attempting to improve her credit score for future credit transactions, the Plaintiff was harmed because of Defendants' inaccurate reporting of her accounts.

80.    Defendants' consumer report failed to report Plaintiff's Accounts and Plaintiff's Chapter 7 Bankruptcy appropriately, which causes severe damage to Plaintiff's creditworthiness and her financial wellbeing.

81.    Plaintiff's consumer credit file and consumer reports reviewed by numerous other entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by the Defendants.

82.    As a direct result of Defendants' inaccurate reporting and failure in investigating disputes, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

83.    As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred.

84.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I

### VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

85.    Plaintiff repeats, reiterates, and incorporates the allegations contained in paragraphs numbered 1 through 84 above herein with the same force and effect as if the same were set forth at length herein.

86.    Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

87.    However, Defendants failed to report Plaintiff's Accounts accurately, reporting them as charged-off accounts with balances when they were actually included and discharged in Plaintiff's Chapter 7 Bankruptcy.

88.    Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy accounts after a consumer receives a Discharge Order.

89.    Defendants received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendants through sources of consumer information such as Lexis-Nexis, Defendants' own files, and information provided by data furnishers, yet Defendants misapplied that information.

90.    Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file Chapter 7 Bankruptcies.

91.    Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

92.    Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update accounts that were actually included in a bankruptcy, as required by 15 U.S.C. § 1681e(b).

93.    Defendants know the information that they report about consumers' bankruptcies is often inconsistent with public records and their own files.

94.    Defendants' failure to maintain and employ reasonable procedures to assure the information they report is accurate is particularly egregious because Defendants regularly and voluntarily search for consumer bankruptcy information to include in credit files.

95.    Defendants knew or should have known that they are obligated, by the FCRA, to maintain and employ reasonable procedures to assure they report maximally accurate consumer credit information.

96.    Defendants knew or should have known that they are obligated, by the FCRA, to update their consumer reports and the relevant tradelines.

97.    Defendants knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge the statutorily dischargeable debts.

98.    CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving Defendants.

99.    Therefore, Defendants have ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

100.   If Defendants contends that they did not have sufficient notice, Defendants must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file Chapter 7 bankruptcies.

101.   Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties for a profit.

102.   When Defendants received notice of Plaintiff's bankruptcy information, they had an obligation to ensure that they reported Plaintiff's discharge and its effects with maximal accuracy, and to report an account as discharged when it was discharged in bankruptcy.

103.   Unfortunately, Defendants willfully and consciously breached their duties as CRAs and deprived Plaintiff of her right to a fair and accurate consumer report.

104.   Despite knowledge of their legal obligations, Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

105.   Defendants know that a debt that was discharged in a bankruptcy should be reported as discharged on credit reports.

106.   Defendants knew or should have known the information they reported about Plaintiff's Accounts was inaccurate.

107.   Defendants violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

108.   Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

109.   Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

110.   Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

111.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendants for failing to report Plaintiff's Account and her Chapter 7 Bankruptcy accurately.

112.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

113.   Defendants are a direct and proximate cause of Plaintiff's damages.

114.   Defendants' actions are substantial factor in Plaintiff's damages.

115.   Therefore, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

## DEMAND FOR TRIAL BY JURY

116.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant Trans Union, LLC, and Defendant Equifax Information Services, LLC for the following:

1.   Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

2.   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

3.   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

4.   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

5.      Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

6.      Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

7.      Awarding the Plaintiff any such other and further relief as this Court may deem just and proper.


Dated:      June 5, 2024                    Respectfully submitted,

                                            */s/ Justin Zeig*
                                            **Zeig Law Firm, LLC**
                                            By: Justin Zeig, Esq.
                                            3475 Sheridan Street, Suite 310
                                            Hollywood, FL 33021
                                            Phone: (754) 217-3084
                                            Fax: (954) 272-7807
                                            zlf@zeiglawfirm.com
                                            *Counsel for Plaintiff*